**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Robert Robinson,** | ) | **CASE NO. 1:15 CV 426** |
| | ) | |
| **Petitioner,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Alan J. Lazaroff, Warden,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| | ) | |
| **Respondent.** | ) | |

This matter is before the Court upon the Report and Recommendation of Magistrate Judge James R. Knepp, II (Doc. 12) recommending that this Court dismiss Petitioner's Petition for Writ of Habeas Corpus (Doc. 1). Petitioner has filed Objections to the Report and Recommendation. For the reasons set forth below, the Report and Recommendation is ACCEPTED.

**Standard of Review**

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts provides that the district court reviews *de novo* those portions of a report of a

1

magistrate judge to which a specific objection is made. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985). The judge may accept, reject, or modify any proposed finding or recommendation.

**Discussion**

Petitioner and a co-defendant were charged in a ten-count indictment based on an incident that took place on February 22, 2012, on Garfield Road in East Cleveland. During the incident, Dena'Jua Delaney ("Bubbles")[1] was fatally shot. Petitioner was charged with aggravated murder and two counts of murder involving one victim (Counts 1-3), six counts of felonious assault involving six different named victims (Counts 4-9), and discharging a firearm on or near prohibited premises (Count 10). All counts included one, three, and five-year firearm specifications. Petitioner pleaded not guilty to the charges, and the State voluntarily dismissed the aggravated murder charge prior to trial. The matter proceeded to a jury trial. The trial court granted a motion for acquittal on Count 9, and the jury found Petitioner guilty on Counts 2, 4, 5, 6, 7, 8, and 10, and guilty of the one and three-year firearms specifications on each charge, but not guilty of the five-year specifications. It found him not guilty on Count 3, purposely causing the death of Bubbles. The Court sentenced Petitioner to life in prison with the possibility of parole after fifteen years, consecutive to a term of three years on the firearm specification, two years each on the felonious assault convictions, three years for Count 10, and an additional consecutive three years for the merged firearm specifications. The R&R sets forth the factual and procedural background of this case in detail, and the Court adopts that discussion as if rewritten herein. (R&R at 1-11).

---

[1] The state appellate opinion referred to Delaney as "Bubbles." To avoid confusion, Magistrate Judge Knepp did so as well. For the same reason, this Court will refer to her as Bubbles.

Petitioner filed his federal habeas petition on March 5, 2015, alleging the following claims for relief:

> Ground 1 - Petitioner's convictions for felony murder under O.R.C. 2903.02(B) and F-1 discharging a weapon on or near prohibited places under O.R.C. 2923.162(A)(3) are not supported by legally sufficient evidence as required by the Fifth and Fourteenth Amendments to the United States Constitution.
>
> Ground 2 - Petitioner's convictions for felonious assault are not supported by legally sufficient evidence as required by the Fifth and Fourteenth Amendments to the United States Constitution.
>
> Ground 3 - Petitioner's due process rights under the Fourteenth Amendment and his Sixth Amendment right to a fair trial were violated when the State court affirmed his conviction in whole or in part on a legal theory never presented to the jury.
>
> Ground 4 - Petitioner's due process rights to a fair trial under the Fourteenth Amendment were violated by prosecutorial misconduct during closing argument.
>
> Ground 5 - Petitioner was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.[2]

The Magistrate Judge recommended that all of Petitioner's claims be denied. Petitioner, through counsel, now objects to the Magistrate Judge's recommendation. The Court will address Petitioner's objections in turn.

    A.  <u>Objection to Magistrate Judge's finding that Robinson's convictions were supported by sufficient evidence.</u>

The Magistrate Judge found that the state appellate court's conclusion that Petitioner's convictions were supported by legally sufficient evidence was not unreasonable. Petitioner objects to this conclusion, arguing that no rational jury could have "accepted the eyewitness

---

[2] In his petition, Petitioner withdrew an additional claim for relief. (Doc. 11, at 8 n.4).

testimony, chosen to reject that provided by the medical examiner, and concluded that Robinson was guilty." (Doc. 14, at 9).

In addressing this issue, the Magistrate Judge stated:

> [A]s the appellate court found, "several witnesses testified that they saw Bubbles 'go down' after Robinson fired his gun. And these witnesses testified that there was no shooting from the crowd directed toward the car until after Bubbles went down." *Robinson*, 2013 WL 5517978, at *5. The state presented evidence in the form of testimony from Paul Small and Antonio Delaney that Bubbles fell to the ground after Petitioner shot his gun (Tr. 635, 615-16). Other witnesses, including Latima Brown, Devin Delaney, Darylisa Crenshaw, also testified that Bubbles was still standing after the shots from the passenger, but was on the ground after the driver shot. (Tr. 285-86, 427-28, 407-08). Several witnesses also testified that no other shots were fired before Bubbles fell. (Tr. 290-82, 408-10, 432-33, 593-95, 604). Additionally, forensic scientist Andrew Chappell testified that the bullet found near Bubbles was capable of being fired from the type of firearm used by Robinson. (Tr. 690). Taking the evidence in the light most favorable to the prosecution, this is sufficient evidence from which a jury could conclude Petitioner "cause[d] the death of" Bubbles "as a proximate result of . . . committing or attempting to commit" felonious assault on Bubbles. Ohio Rev. Code § 2903.02(B). This is so despite the evidence cited by Petitioner to the contrary.
>
> Petitioner raises valid questions and a persuasive argument as to the evidence; however, inconsistencies are not enough to overturn the determinations made by the state court. Petitioner's argument is ultimately based on the weight assigned to various testimonial evidence and it is not the undersigned's role to weigh that evidence in the first instance. Here, the jury opted to believe the testimony of eyewitnesses over the contradictory testimony from the medical examiner and it is not the place of this Court to overturn such determinations. *See Cavazos*, 132 S. Ct. at 6-7; *Jackson*, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). A rational trier of fact could find Petitioner guilty beyond a reasonable doubt of felony murder based on the evidence presented and the state appellate court's application of the law to these facts was objectively reasonable.

This Court finds this analysis persuasive and adopts it as its own. Petitioner's objection on the basis that "the guilty verdict was simply irrational" is overruled.

Petitioner also objects that the Magistrate Judge misapplied Ohio law in ruling on the sufficiency of the evidence on his felonious assault conviction. Petitioner points out that both he and the State agreed that the State had to prove that the victims were in the "line of fire" to obtain a conviction for felonious assault. The Magistrate Judge found that the state appellate court's conclusion that there was sufficient evidence to support the felonious assault convictions was not unreasonable. In doing so, he stated that "all five victims were within the *target range* of the shots fired by either Petitioner or Logan." (R&R at 26) (emphasis added). Petitioner argues that this was a misapplication of the "line of fire" standard.

Petitioner's objection is not well-taken. In addressing this issue, the state appellate court adopted the reasoning in *State v. Ivory*, 2004 WL 1274383 (Ohio Ct. App., June 10, 2004), to determine what constitutes being "in the line of fire" in a drive-by shooting situation.[3] The court in *Ivory* held:

> When, as here, the targets are considerably farther away [than a target standing within point-blank range], and aiming is made more difficult because the shooter is in a moving vehicle, it can reasonably be inferred that the shooter is intending to shoot within a much wider target range. Hence, ***anyone standing within that wider target range can be an intended target, regardless of whether the shooter hits the mark***.

*Id.*, at *2 (emphasis added). In other words, anyone within the "target range" in a drive-by shooting is "in the line of fire" for purposes of a felonious assault charge. Thus, the Magistrate Judge did not misapply Ohio law in holding that there was sufficient evidence to support Petitioner's conviction for felonious assault because the victims were within the target range.

---

[3] As the Magistrate Judge noted, this Court is bound by the state court's interpretation of state law.

B. <u>Objection to Magistrate Judge's conclusion that the State Court's decision is entitled to double deference.</u>

Petitioner argues that his claims before this Court should receive *de novo* review because the state appellate court affirmed his conviction on a theory of culpability that the State did not present to the jury. Specifically, Petitioner claims that the state appellate court violated his due process rights when it upheld his felony murder conviction after concluding that the "jury didn't have to believe that Robinson's shot actually killed Bubbles to convict him of the felony murder count." (Doc. 14, at 10) (quoting *Ohio v. Robinson*, Cuyahoga App. No. 99290, 2013-Ohio-4375, ¶ 57). As discussed in the next section, the Court agrees with the Magistrate Judge that the state appellate court did not violate his due process rights in upholding his conviction; thus, the Magistrate Judge did not err in holding that Petitioner's claims were subject to AEDPA deference.

C. <u>Objection to Magistrate Judge's conclusion that the Eighth District's reliance on a prosecution theory neither pleaded, nor argued, nor proved to the jury to uphold his conviction did not constitute a violation of his rights under the due process clause.</u>

In Ground 3, Petitioner claims that the state appellate court violated his due process rights because it affirmed his felony murder conviction on the basis that (1) he committed felonious assault and (2) his felonious assault proximately caused Bubbles's death, even if it was through crossfire. Petitioner argues that the State's only theory at trial was that Petitioner shot Bubbles and that the appellate court violated his rights by affirming on a crossfire theory, which the State did not present to the jury.

As the Magistrate Judge correctly noted, the appellate court only addressed the crossfire theory as an alternative argument after determining that the evidence presented at

6

trial was sufficient for the jury to conclude that Petitioner shot Bubbles. (R&R at 31). Only after first concluding that the eyewitness testimony was sufficient for the jury to conclude that "Robinson shot and killed Bubbles" did the appellate court then turn to the alternative crossfire theory: "*Moreover*, we find [Petitioner's] challenge to his murder conviction flawed for *another* reason." *State v. Robinson*, 2013 WL 5517978, at \*\*9-10 (Ohio Ct. App. 8th Dist. Oct. 3, 2013). In his Objections, Petitioner essentially ignores the appellate court's primary rationale for upholding his conviction, stating:

> It is clear from the record that the evidence did not prove that Robert Robinson shot Delaney....[G]iven that there was no evidence that Robinson actually shot Delaney, and in fact, credible evidence demonstrating that he *could not* have shot her, the Eighth District resorted to a cross-fire theory and upheld the conviction.

(Doc. 14, at 10-11).

The problem with Petitioner's argument is that his challenge to the appellate court's primary rationale is an argument about the manifest weight of the evidence. Indeed, the appellate court recognized this in rejecting Petitioner's argument that the evidence could only support the conclusion that he did not shoot Bubbles:

> Robinson's manifest weight of the evidence challenge is premised on the notion that Dr. McCollom's testimony regarding the existence of stippling and the corresponding distance of the shooter was infallible. The jury, however, was free to disbelieve Dr. McCollom's testimony. Further, Robinson's argument ignores the very function of the jury, namely, to resolve conflicts in the evidence. The jury heard from several witnesses whose testimony could reasonably be construed to mean one thing: Robinson shot and killed Bubbles. It is well settled that the credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts primarily to resolve.

*Robinson*, 2013 WL 5517978, at 9. As Respondent argued in his return of writ–and Petitioner did not dispute–a manifest weight argument is not cognizable in a habeas proceeding because

it is purely a matter of state law. *See Estelle v. Williams*, 502 U.S. 62, 67 (1976) ("federal habeas corpus relief does not lie for errors of state law"); *Ross v. Pineda*, 2011 WL 1337102, at \*3 (S. D. Ohio April 7, 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law."); *see also Tibbs v. Florida*, 457 U.S. 31, 47 (1982); *State v. Thompkins*, 78 Ohio St. 3d 380, 389 (1997) (finding that sufficiency of the evidence and weight of the evidence are not synonymous legal concepts). Thus, because the state appellate court did not deprive Petitioner of any constitutional right by affirming his conviction over his manifest weight of the evidence challenge, Ground 3 is dismissed.

> D. <u>Objection to Magistrate Judge's refusal to address Petitioner's argument that his ineffective assistance of counsel claim is entitled to de novo review.</u>

As the Magistrate Judge noted, Petitioner's final two grounds are interrelated. In Ground 4, he claims that the prosecutor engaged in misconduct during closing argument, and in Ground 5, he claims that trial counsel was ineffective for failing to object to the prosecutor's improper statements. The Magistrate Judge found–and Petitioner does not dispute–that the prosecutorial misconduct claim is procedurally defaulted. Petitioner argues, however, that counsel's ineffective assistance in failing to object constitutes cause and prejudice to excuse the default. He further argues that his ineffective assistance of counsel claim is entitled to *de novo* review because the state appellate court misapplied the *Strickland* prejudice standard in addressing this claim. In his Objections, Petitioner asserts that the Magistrate Judge erroneously applied AEDPA's deferential standard to the claim.

Petitioner's objection is not well-taken because the Magistrate Judge clearly applied

*de novo* review to the ineffective assistance claim.[4] In fact, the record contains multiple places where he specifically stated that he was reviewing the claim *de novo*:

> "An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel. The latter must meet the higher AEDPA standard of review, while the former need not." *Hall v. Vasbinder*, 563 F.3d 222, 236-37 (6th Cir. 2000). ***Thus, review of this claim is de novo.*** *Id.*; *Hale v. Burt*, 645 F. App'x 409, 416 (6th Cir. 2016). To establish ineffective assistance of trial counsel, Petitioner must show: 1) his counsel's performance "fell below an objective standard of reasonableness", and 2) the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687–688 (1984)....
>
> Even if the court here assumes arguendo the prosecutor's remarks were improper, the pertinent prejudice question is whether Petitioner can establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

(R&R at 37-38) (emphasis added). After analyzing the record, he stated: "the undersigned cannot conclude that there is a 'reasonable probability' that, but for the failure to object, 'the result of the proceeding would have been different.'" (*Id.* at 39). He then noted that "**although review here is *de novo*** in determining cause and prejudice," the state appellate court "came to a similar conclusion." (*Id.*) (emphasis added). In addressing Petitioner's free-standing ineffective assistance claim, the Magistrate Judge stated: "Because Petitioner cannot show ineffective assistance of counsel satisfies the prejudice necessary to overcome the procedural default for his prosecutorial misconduct claim **on *de novo* review**, his ineffective assistance of counsel claim on the same basis also fails." (*Id.* at 40) (emphasis added). Finally, he explained that he did not need to reach Petitioner's argument that the state court

---

[4] In doing so, the Magistrate Judge applied the correct prejudice standard under *Strickland*.

misapplied the *Strickland* standard because he had already found, under a *de novo* review, that ineffective assistance of counsel could not overcome the procedural default on the prosecutorial misconduct claim. (*Id.* at 40, n. 11).

> E. Objection to Magistrate's rejection of Petitioner's IAC and Prosecutorial Misconduct Claims.

Finally, Petitioner objects to the Magistrate Judge's conclusion that counsel's failure to object to the prosecutor's statements during closing argument did not constitute ineffective assistance of counsel. According to Petitioner, "the most important piece of exculpatory evidence in this case" was the medical examiner's (Dr. McCollom) testimony that Bubbles was shot in the face at close range, which he believes makes it impossible for him to have been her shooter. (*See* Doc. 11, at 26). He argues that the prosecutor improperly attacked this evidence during the State's final summation by arguing "that Dr. McCollulm's testimony was somehow invalid because it was really the ballistics expert who was qualified to offer an opinion on this subject." In his Objections, he highlights the following statements by the prosecutor:

> But right after [Dr. McCollom], we had a ballistics expert up here and testifying, right. A guy, Mr. Schlachet says, is a terrific expert, well qualified. Well, ask him the question, right? Ask him the question about the distance of this gunshot residue. Why don't you?

(Tr. 1052-53)

> [The defense] want to wrap their arms around [Dr. McCollom] because she said this bit about fluid distance of gunshot residue and get the ballistics expert up here, ask Andy [Chappell] some questions. You know, ask Andy some questions about that . . . .

(Tr. 1064). Petitioner contends that the prosecutor's statements "insinuated, without evidentiary support, that: 1) Dr. McCollom was not qualified to offer her scientific opinion; 2)

10

Chappell (the firearms' expert) would have been qualified to offer an opinion on the distance between the firearm and a shooting victim; and, most critically, 3) Chappell's testimony *would* have contradicted Dr. McCollom's testimony." (Doc. 14, at 15).

In concluding that trial counsel's failure to object to the prosecutor's statements during closing argument did not meet the *Strickland* prejudice prong, the Magistrate Judge noted that the comments Petitioner objects to take up less than two transcript pages of the state's twenty-page closing argument, the trial court instructed the jury before and after closing arguments that such arguments are not evidence, and the prosecutor himself reminded the jury that his argument was not evidence. The Magistrate Judge also rejected the Petitioner's argument that the closing argument was the only reason the jury had for disbelieving Dr. McCollom because the jury had the testimony of several eyewitnesses who testified that Bubbles did not fall until after Petitioner shot and that no one else was shooting at the time of her death. Based on these facts, he could not conclude that there was a "reasonable probability" that, but for counsel's failure to object, "the result of the proceeding would have been different." (R&R at 39) (quoting *Strickland*, 466 U.S. at 694).

This Court finds the Magistrate Judge's analysis persuasive and adopts it herein. The trial court instructed the jury at the beginning of the trial and immediately before closing arguments that "[o]pening statements and closing arguments do not constitute evidence in this case and they shall not be considered as evidence by the jury." (Tr.at 208, 962). It further instructed the jury at the end of the trial that its own "recollection controls....If any reference by the Court or counsel to matters of evidence does not coincide with your own recollection, it's your own recollection that should control your deliberations, okay." (*Id.* at 1069). Jurors

11

are presumed to follow their instructions. *United States v. Harvey*, 653 F.3d 388, 396 (6th Cir. 2011) (citing *United States v. Neuhausser*, 241 F.3d 460, 469 (6th Cir. 2001)). Aside from arguing that "the jury would have had no basis to disregard" Dr. McCollom's testimony absent the prosecutor's statements, Petitioner offers nothing to rebut the presumption that the jury followed the instruction not to take closing arguments as evidence. (Doc. 14, at 16). But, as discussed above, the jury had before it sufficient evidence from eyewitness testimony to conclude that Petitioner shot Bubbles–this evidence was a basis to reject Dr. McCollom's testimony. Moreover, the prosecutor's statement did not affirmatively misstate any evidence in the record; rather, he posed a rhetorical question, presumably with the expectation that the jury would draw an inference favorable to the State as to the answer. The jury would know that he was asking them to draw an inference and that his question was not factual evidence. *See Byrd v. Collins*, 209 F.3d 486, 536 (6th Cir. 2000) ("The jury would know that [prosecutor's] comments [speculating about the evidence] were inferences, and they would not be confused into believing that these comments were factual evidence."). Given that the prosecutor's comments were but a few lines in an otherwise lengthy trial (the trial record is over 1000 pages long), the Court agrees with the Magistrate Judge that, had trial counsel objected to the prosecutor's comments, there is not a reasonable probability that the result of the proceeding would have been different.

For these reasons, Ground 5 (Petitioner's independent ineffective assistance of counsel claim) is dismissed. Moreover, because Petitioner cannot overcome his procedural default, Ground 4 (Petitioner's prosecutorial misconduct claim) is dismissed.

**Conclusion**

For the reasons stated above and in the Report and Recommendation, the Report and Recommendation of Magistrate Judge Knepp recommending dismissal of Petitioner's pending Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is ACCEPTED. Magistrate Judge Knepp correctly determined that Petitioner is not entitled to a writ of habeas corpus. Further, for the reasons stated herein and in the Report and Recommendation, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed.R.App.P. 22(b).

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 1/26/17